AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Montana


FILED
SEP 2 3 2016
Clerk, U.S District Court
District Of Montana
Missoula

United States of America )
v. )
) Case No. MJ-16-75-M-JCL
)
Terrance Tyrell Edwards )
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 19-21, 2016 in the county of Yellowstone in the _____ District of Montana, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1591 | Sex trafficking by force, fraud, or coercion |

This criminal complaint is based on these facts:
Based on the attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Guy A. Baker, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-23-16

_____
Judge's signature

City and state: Missoula, Montana

Jeremiah C. Lynch, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Guy Alan Baker, being duly sworn, depose and state as follows:

1. I am a Detective with the Missoula Police Department and a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) who is currently assigned to the FBI's Montana Regional Violent Crime Task Force (MRVCTF) in Missoula, Montana. I have been employed with the Missoula Police Department for twenty-six years and have been a Detective for sixteen years. I have been assigned as a TFO with the MRVCTF six years. While assigned to the MRVCTF, I have investigated numerous violations of Federal law, including offenses enumerated under Title 18 of the United States Code.

2. I have become familiar with an investigation of the sex trafficking of an adult female individual, identified by the number, 1, which took place within the State of Montana and across state lines in the State of Utah. Additional juvenile female victims, transported from the State of North Dakota into Montana, are identified by the numbers, 2, 3, and 4. An additional adult female victim, who was brought from the State of Washington into Montana for the purpose of commercial sex, is identified by the number, 5.

3. The information set forth in this affidavit is known to me as a result of an investigation conducted by the Montana Division of Criminal Investigation (DCI), the Billings Police Department (BPD) and the FBI. In addition, I have reviewed various law enforcement reports, and have spoken with other law enforcement personnel associated with this investigation. Since this affidavit is being submitted for the exclusive purpose of providing probable cause for the issuance of an arrest warrant for TERRANCE TYRELL EDWARDS (born in August 1982), I have not

included each and every fact known in this investigation, but only those facts necessary to establish probable cause for the authorization of an Arrest Warrant.

## STATEMENT OF PROBABLE CAUSE

4.  On September 20, 2016, the Billings Police Department (BPD) responded to the Rodeway Inn in Billings, Montana, in regard to the adult female victim, VICTIM 1, allegedly being held against her will at the hotel. BPD notified both DCI and the FBI. A DCI agent and a Billings FBI agent responded to the Rodeway Inn and met with on-scene BPD officers and detectives. Upon arrival, VICTIM 1 was present in the room by herself. An interview with VICTIM 1 revealed that VICTIM 1 initially had contact with the EDWARDS via the social network site, meetme.com. On approximately September 10, 2016, VICTIM 1 met EDWARDS for the first time in Missoula, Montana. VICTIM 1 believed that she and EDWARDS were initiating a dating relationship. EDWARDS took VICTIM 1 to a store to buy some clothing. VICTIM 1 initially picked out an item but EDWARDS told her it was not sexy enough. EDWARDS then picked out a number of items that VICTIM 1 could choose from and VICTIM 1 selected a piece of red lingerie which EDWARDS purchased. That evening, EDWARDS took photographs of VICTIM 1 in provocative poses wearing only the lingerie.

5.  The following day, a motel room was obtained at the Howard Johnson Inn in Missoula. EDWARDS explained his plans to make money with VICTIM 1 and posted advertisements on Backpage.com offering that VICTIM 1 was available for in-calls and out-calls. Agents were able to retrieve and view these internet advertisements, some containing pictures of VICTIM 1 in the red lingerie purchased by EDWARDS for VICTIM 1, advertising VICTIM 1 in Billings, Missoula, and Salt Lake City, Utah. EDWARDS set an initial goal for the first day of $1500 for VICTIM 1 to meet. On that first day, VICTIM 1 met with and had sex with men and earned $1400. The money made from these sexual encounters was provided to EDWARDS. EDWARDS "worked" VICTIM 1 in commercial sex for approximately 10 days taking VICTIM 1 on a trip to Salt Lake City, Utah.

In Salt Lake City, VICTIM 1 had sexual encounters with a few men based upon Backpage.com advertisements. Since Backpage.com generated business was slow, EDWARDS instructed VICTIM 1 to walk the streets to obtain commercial sex customers. EDWARDS established rules that VICTIM 1 should not get into any vehicle when approached by potential customers on the street that had more than one person in the car. VICTIM 1 had multiple commercial sex customers while walking the street in Salt Lake City. Backpage.com and Eroticmugshots.com advertisements posted for VICTIM 1 by EDWARDS reflect that VICTIM 1 was advertised in Salt Lake City on September 15-17, 2016. VICTIM 1 worked for EDWARDS in commercial sex in Billings, Montana; Missoula, Montana; and Salt Lake City, Utah.

6. While EDWARDS was trafficking VICTIM 1, he additionally traveled into Washington State and retrieved another adult victim, VICTIM 5. Under EDWARDS, VICTIM 5 and VICTIM 1 both conducted a commercial sex transaction with an adult male in Billings, Montana on or about September 19, 2016. The adult male paid $200 for the sex. VICTIM 5 was located and was reluctant to provide any information to law enforcement. VICTIM 5 stated that she would prefer to be a subject of the investigation rather than a witness cooperating with law enforcement. The DCI agent that interviewed VICTIM 5, believed that she was struggling with a serious drug addiction.

7. When VICTIM 1 was "working" for EDWARDS, EDWARDS established rules that VICTIM 1 was required to follow to include that she was not allowed to look at another male or acknowledge the presence of another male in the community unless VICTIM 1 could make money from this male. While sitting in the parking lot of the Rodeway Inn in Billings, Montana, in EDWARDS's car, VICTIM 1 was focusing on not looking at anyone. VICTIM 1 described that this was a difficult skill to master as one's eyes are always drawn to movement so she had to concentrate to follow this rule of EDWARDS. At that point, a black male exited his room and walked through VICTIM 1's field of vision because VICTIM 1 was staring at the hotel wall to avoid looking at anyone. EDWARDS noticed

that VICTIM 1 had glanced at the man and EDWARDS swung the back of his hand striking VICTIM 1 in the face. VICTIM 1's nose and face immediately began to bleed and her eye was injured by EDWARDS finger. This was EDWARDS's punishment of VICTIM 1 for looking at another male. Following this incident, VICTIM 1 was fearful for her physical well-being. EDWARDS told VICTIM 1 that he had a firearm, but VICTIM 1 never observed the firearm. EDWARDS also insisted that VICTIM 1 check-in with him when she was "working" and he was not immediately present. VICTIM 1 was sometimes required to do this every two hours.

8. VICTIM 1 was in possession of a cellular telephone when law enforcement made contact with her. At the time of initial law enforcement contact, a Backpage.com advertisement with a phone number matching this device, advertising a VICTIM 1 was retrieved. VICTIM 1 confirmed that the images on the advertisement were taken by EDWARDS and the advertisement was posted by EDWARDS. The red lingerie pictured in these advertisements and purchased for VICTIM 1 by EDWARDS was found in the room. Text messages in the cell phone confirmed communication with a cell phone belonging to EDWARDS. Some of the text messages made references to VICTIM 1 meeting with commercial sex customers. While being interviewed by law enforcement, VICTIM 1 continued to check in with EDWARDS, approximately every two hours per EDWARDS's rules. EDWARDS had left VICTIM 1 and VICTIM 5 at approximately 5:00 p.m. on September 19, 2016, telling VICTIM 1 that he was headed to pick up additional girls. More than 24 hours later, in telephonic communications with VICTIM 1, EDWARDS stated that he was approximately eight hours away from Billings. Later, EDWARDS stated to VICTIM 1 that he had tried to retrieve the additional girls, but they had decided not to come with him. In a later conversation EDWARDS stated that he had started on his way back to Billings but then the girls had contacted him again, so he had to return to pick them up.

9.   On September 21, 2016, at approximately 6:45 a.m., the FBI case agent observed EDWARDS's vehicle parked to the south of the Rodeway Inn in Billings, Montana. The agent then observed EDWARDS pacing in front of the motel. The agent departed the parking lot and telephoned the DCI case agent. A plan was formulated to wait for the DCI agent's arrival before approaching EDWARDS. Independently, BPD received a tip regarding EDWARDS and approached EDWARDS approximately 5 minutes later. When FBI case agent approached EDWARDS, the agent asked EDWARDS where his telephone was and EDWARDS handed the agent a smartphone that had been bent almost in half. As BPD initially approached him, EDWARDS purposely grabbed his smartphone and bent it. EDWARDS explained to the agent that he was simply frustrated and that caused him to destroy his phone.

10.   EDWARDS told the FBI case agent that he had rented a room on the second level of the Rodeway Inn and EDWARDS glanced toward the location of the room. The agent went to the room, already accessed by BPD Officer, and met with VICTIMS 2, 3, and 4. While the FBI case agent was in the room with these victims, EDWARDS was arrested by the DCI case agent.

11.   VICTIM 2 is a 17-year-old female from Minnesota. VICTIM 3 is a 15-year-old female from North Dakota. VICTIM 4 is a 16-year-old female from the Fargo, North Dakota area. According to these victims, they were picked up by EDWARDS from a Fargo, North Dakota address at approximately 8:00 p.m. on September 20, 2016. EDWARDS drove them from Fargo, North Dakota and they arrived in Billings, Montana at approximately 4:00 a.m. on September 21, 2016. EDWARDS initially tried to gain access to a room at the Rodeway Inn, presumably the room that law enforcement met VICTIM 1 in and subsequently departed, approximately two hours earlier. EDWARDS then rented a room on the top floor of the hotel where VICTIMS 2, 3, and 4 were recovered. VICTIM 3 had initiated contact with EDWARDS over the internet and EDWARDS told her that he would pick her up and they would make money together. VICTIM 3 shared EDWARDS's contact information and EDWARDS's plan with VICTIM 2.

Evidence of contact between EDWARDS and these victims was corroborated by messages observed on VICTIM 2 and VICTIM 3's telephones. The recovered messages even detailed EDWARDS attempting to convince the victims to come with him when they had decided against going with him. VICTIM 2 and VICTIM 3 stated that EDWARDS never described specifics of how he planned to make money with them; however, both VICTIM 2 and VICTIM 3 understood that EDWARDS's plan was to work them in commercial sex trafficking. VICTIM 2 had previously done commercial sex in Fargo, North Dakota but stated that she did that on her own. VICTIM 3 stated that she had never before been involved in commercial sex. At one point, VICTIM 3 stated that possibly his plan was to have them help him sell drugs, but VICTIM 3 ultimately admitted that she believed sex trafficking was EDWARDS's actual plan. VICTIM 4 was present when EDWARDS arrived to pick up VICTIMS 2 and 3, and EDWARDS directly asked her if she wanted to go with them. VICTIM 4 did not know the purpose of the trip, but VICTIM 4 jumped in the car with EDWARDS. VICTIMS 2 and 3 attempted to discourage VICTIM 4 from going, but VICTIM 4 stayed in the car. EDWARDS provided VICTIM 4 with marijuana to smoke on the way from North Dakota to Montana. These victims recalled stopping a gas station on the way from North Dakota but each of them slept for at least part of the ride. VICTIM 3 lied to agents regarding her identity and provided the name and date of birth of a relative that was an adult. VICTIM 2, VICTIM 3, and VICTIM 4 were recovered by law enforcement approximately 11 hours after EDWARDS met with them and transported them to Montana from North Dakota.

12. VICTIM 1 told the agents that EDWARDS had her drive him to a court hearing in Missoula on September 19, 2016. This hearing was scheduled such that EDWARDS could be discharged from probation in regard to a prior prostitution charge. At the time that VICTIM 1 drove EDWARDS to this hearing, EDWARDS had been trafficking VICTIM 1 in commercial sex for approximately 9 days.

## CONCLUSION

13. Based upon the facts outlined in this affidavit, the affiant believes that there is probable cause for the issuance of an arrest warrant for TERRANCE TYRELL EDWARDS for violation of Title 18 United States Code § 1591. Assistant United States Attorney Zeno Baucus concurs with this assessment.

Dated this 23 day of September, 2016.

Guy Alan Baker
FBI Task Force Officer

Sworn to before me and subscribed to in my presence on this 23 day of September 2016.

Jeremiah C. Lynch
U.S. Magistrate Judge